UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DISABLED PATRIOTS OF AMERICA, INC.,
A FLORIDA NOT FOR PROFIT
CORPORATION, AND MICHAEL MILES,
INDIVIDUALLY

      Plaintiffs

  vs.

S & S REALTY LTD., AN OHIO LIMITED
LIABILITY COMPANY, D/B/A QUALITY
INN

      Defendant

CASE NO. 1:05 CV 2496-CAB

JUDGE CHRISTOPHER A. BOYKO

**CONSENT DECREE**

* * * *

    This Consent Decree is entered into by and between DISABLED PATRIOTS OF

AMERICA, INC., a not-for-profit corporation, and MICHAEL MILES, Individually, hereinafter

sometimes referred to as "Plaintiffs," and S & S REALTY LTD., AN OHIO LIMITED

LIABILITY COMPANY, D/B/A QUALITY INN, hereinafter sometimes referred to as

"Defendant," on the date last executed below.

        WHEREAS, Defendant's property is known as Quality Inn at The Greentree and is

located at 1935 Cleveland Rd., Sandusky, OH 44870.  Plaintiffs claim that there are architectural

barriers existing at Defendant's property which constitute violations of the Americans With

174360.doc



EXHIBIT
A

Disabilities Act and unlawfully limit Plaintiffs' use of property. Defendant does not admit any of the allegations of Plaintiffs' Complaint, but recognizes that Plaintiffs might prevail and receive some relief on the merit of their claim. In consideration for resolving all matters in dispute, the parties have agreed to the following terms and conditions subject to the Court entry of an Order Approving and Entering the Consent Decree.

1. All alternations, modifications, and policies required by this Consent Decree shall be completed prior to the reinspection date set forth below, unless a different completion date is otherwise stated herein. A final property reinspection conducted by Plaintiff(s) will take place, on or after July 15, 2007, to ensure that the modifications to the subject property required below for barrier removal have been completed. Plaintiffs' counsel, expert(s) and/or representatives shall be provided access to the building to conduct a reinspection and to verify commencement, progress and completion of the work required hereby. In any event, Defendant or its counsel shall notify Plaintiffs' counsel, by Certified Return Receipt Mail, when all improvements contemplated herein are completed. In the event of alleged non-compliance, with the terms and conditions of this agreement, Defendant shall immediately be placed on notice of the alleged non-compliance, and will be given thirty (30) days from the date the notice is received to cure the alleged non-compliance. In the event the alleged non-compliance is not cured to Plaintiffs' satisfaction, Plaintiffs shall be entitled to specifically enforce the terms of this Consent Decree.

2.       Defendant shall pay Plaintiffs' counsel, Fuller, Fuller and Associates, P.A., for Plaintiffs' attorneys' fees, litigation expenses, costs and for Plaintiffs' expert fees and costs incurred in this matter, the amount of Twenty Thousand Dollars ($20,000.00). Ten Thousand Dollars ($10,000.00) of this fee will be paid by Defendant within ten (10) days of the execution of this Consent Decree and the remainder will be paid no later than thirty (30) days from the execution of this Consent Decree. The amount to be paid shall be payment in full for all legal, expert and miscellaneous expenses incurred in the litigation of this matter.

3.       All issues are resolved between parties, and the parties hereby agree to request the Court to approve and enter this Consent Decree, providing for retention of jurisdiction by the Court to enforce, as necessary, the terms of this Consent Decree.

4.       In any action to enforce this Consent Decree, the prevailing party shall be entitled to attorneys' fees, costs and expert fees.

5.       This Consent Decree shall be binding upon and inure to the benefit of the parties hereto and their respective successors and/or assigns. The parties shall perform their obligations under this Consent Decree in good faith.

6.       The parties agree that any delays in making the modifications to the property, pursuant to the terms of this Consent Decree, which are caused by third parties, including, but not limited to, construction contractors, or city building officials, inspectors, or permitting departments, will not be deemed to violate the compliance dates herein, as long as Defendant makes

a good faith effort to effect implementation as soon as reasonably possible thereafter.

7.   Upon the Court's approval of this Consent Decree, and upon Defendant's full compliance with the terms and conditions of this Consent Decree, Plaintiffs hereby release and discharge Defendant, its officers, employees, agents, successors and assigns from any and all claims and causes of action under the Americans With Disabilities Act.

8.   All references to the ADAAG refer to the following:

28 CFR Chapter 1 Part 36, App. A. (7-1-98 edition) - ADAAG

9.   The parties acknowledge that the modifications described in this Consent Decree shall be implemented according to the standards set out in the ADAAG. All figures referenced in the paragraphs below refer to those that accompany the ADAAG, and more fully describe the considered full compliance with the ADA.

10.   This Consent Decree can be executed in any number of counterparts, each of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. A facsimile copy of any party's signature shall be deemed as legally binding as the original signature.

11.   Defendant is advised that, under certain circumstances, a tax credit and/or tax deduction may be available to businesses to help cover the cost of making access improvements. (See Sections 44 and 190 of the Internal Revenue Code).

12.     QUALITY INN – GREENTREE shall complete all modifications, and submit to Plaintiffs' counsel a report summarizing the actions it has taken, pursuant to this Consent Decree, by June 15, 2007.

13.     Defendant agrees to correct, by no later than June 15, 2007, the modifications referred to below.

14.     Defendant agrees to modify the property as follows:

**A.     DEFENDANT'S GUEST ROOMS SHALL BE ACCESSIBLE TO THE DISABLED.**

Defendant has a total of eighty-nine (89) guest rooms in its facility, none of which are accessible or have a roll in shower.  Pursuant to ADAAG 9.1.2, Defendant shall correct this condition by providing at least one (1) accessible guest room with a roll in shower.

**Complete By:  June 15, 2007**

**B.     MAINTENANCE OF ACCESSIBLE FEATURES**

Defendant shall maintain, in operable working condition, those features of facilities and equipment that are required, by the Americans with Disabilities Act, to be readily accessible to and usable by persons with disabilities; notwithstanding same, Defendant shall not be in default herein in cases where there are isolated or temporary interruptions in service or access due to maintenance or repairs.

**Complete By:  June 15, 2007**

**PARKING**

**C.     NUMBER OF DISABLED PARKING SPACES**

Defendant shall provide eight (8) disabled parking spaces on the property, in accordance with the requirements of ADAAG 4.1.2(5)(a-e).  Allegedly, none of the eight (8)

designated disabled parking spaces are presently striped as van-accessible spaces. Defendant shall designate at least one (1) of the eight (8) accessible parking spaces as "van-accessible," with that parking space meeting the space requirements for a designated van-accessible parking space, and also having a sign designating that space as a van-accessible parking space.

**Complete By: June 15, 2007**

**D.    THE DESIGN OF THE PARKING SPACES SHALL CONFORM WITH THE ADA REQUIREMENTS.**

The disabled parking spaces shall conform to the requirements of ADAAG section 4.1.2, which provides for the disabled parking spaces to be 8' with a 5' access aisle, except that one (1) in every eight (8) accessible spaces, but not less than one (1), shall be served by an access aisle 96" wide minimum and shall be designated "van accessible." Two (2) accessible parking spaces may share a common access aisle. Parking spaces and access aisles shall be level with surface not exceeding 1:50 (27%) in all directions. Each accessible parking space shall be designated as reserved by a vertically mounted or suspended sign showing the symbol of accessibility (see 4.30.7). Spaces complying with 4.1.2 (5)(b) shall have an additional sign "Van Accessible" mounted below the symbol of accessibility.

**Complete By: June 15, 2007**

**E.    THERE SHALL BE AN APPROPRIATE ACCESSIBLE ROUTE FROM THE PARKING SPACES TO THE FACILITY.**

There is, allegedly, a 2" change of level from the parking lot to the sidewalks that lead to the front entry to the lobby as well as the rear entry to the lobby. The rear entrance to the

lobby, from the accessible parking spaces, as well as the entrance to the restaurant, have a 1 ½" and 3 ½" high threshold, at the entry doors, exceeding the maximum height allowance. Defendant shall correct these excessive thresholds, and shall provide accessible parking as close as possible to the building on the property, and the parking shall be dispersed throughout the property in accordance with the ADAAG. Parking access aisles shall be part of an accessible route to the building or facility entrance, and shall comply with section 4.3. The accessible route, from the parking, shall not run behind the parking spaces but to the front, and the accessible route shall run to an accessible entrance. The accessible route shall be on a firm, level surface and properly outlined in blue paint. The path from the parking spaces shall be a minimum of 36" wide. All access aisles that lead to a raised curb shall lead to a properly sloped curb cut or ramp. All drop-off zones shall conform to the ADAAG and there shall be no ramps into access aisles.

**Complete By:  June 15, 2007**

## ACCESSIBLE ROUTE

**F.**   **THERE SHALL BE AN ACCESSIBLE ROUTE THROUGHOUT THE FACILITY.**

Defendant shall provide a clear, accessible route for the disabled, without obstruction, as described in the ADAAG. This shall include curb cuts where necessary or ramps where necessary. There shall be no obstructions along the accessible route. All ramps should be in compliance with ADAAG 4.4.4(3), 4.7 and 4.8, and handrails shall be provided in accordance with ADAAG 4.8, 4.9 and 4.26.

There shall be an accessible route, within the boundary of the site, from public transportation stops, accessible parking, and public streets or sidewalks to the accessible entrance they serve.

**Complete By: June 15, 2007**

## PUBLIC LOBBY RESTROOM

**G.**    **DEFENDANT'S PUBLIC LOBBY RESTROOM SHALL BE ACCESSIBLE TO THE DISABLED.**

The existing public use restroom located in the lobby area allegedly does not provide a sign, on the latch side of the door, as required. The existing grab bar mounted behind the toilet is allegedly only 26" in length and not 36" as required. Defendant agrees to make all the corrections necessary to bring the lobby restroom to compliance with the ADA.

**Complete By: June 15, 2007**

## POOL AREA RESTROOMS

**H.**    **DEFENDANT'S PUBLIC POOL AREA RESTROOMS**

The public restrooms and locker rooms, in the pool area, allegedly do not provide complaint signage, showers or grab bars. Furthermore, allegedly the existing showers are only 34" wide by 35" long, which does not meet the minimum requirements of the ADA. The lavatories in the men's and women's locker rooms allegedly do not provide the proper clearance for a wheelchair user. It is hereby determined that, due to the fact that the pool area restrooms were constructed, in 1970, and are of such a construction as to require a major reconfiguration for the area, all of which Defendant cannot reasonably afford, no action will be taken by Defendant to bring Defendant's public pool area into compliance with the ADA, including, but not limited to, its restrooms. However, Defendant will place

a sign in or near the pool restrooms directing all disabled to the ADA compliant restroom off the lobby.

## I.   RESTAURANT

### 1.   RESTROOMS IN RESTAURANT

The restrooms in the restaurant have toilets that are mounted 22" away from the side wall, allegedly exceeding the maximum allowance of 18". In the women's restroom, the toilet paper dispenser is mounted above the grab bar, allegedly obstructing its use. The flush control, in the men's restroom, is not located on the wide side of the toilet area as required. Defendant needs to make all the corrections necessary to bring the restaurant restrooms into full ADA compliance.

### 2.   SEATING

The restaurant does not provide seating for a person in a wheelchair; the fixed seating only has 25" clear floor space between two (2) seats and the center posts for the stand alone tables do not provide 19" of clearance as required.

**Complete By:  June 15, 2007**

## J.   BOWLING ALLEY

### 1.   UNISEX RESTROOM

The entry door to the unisex restroom, in the bowling alley, does not provide compliant door hardware as required. The unisex restroom has a grab bar mounted behind the toilet that is only 24" wide and does not meet the minimum requirement of a 36" long grab bar. The toilet paper dispenser is mounted above the grab bar obstructing its use. Defendant agrees to make all of the corrections necessary to bring the bowling alley unisex restroom into ADA compliance.

2.    **RAMPS**

The bowling alley has wooden ramps leading to the bowling lanes that have a surface slope of thirteen percent (13%), exceeding the maximum allowance for a wheelchair user. The aforementioned ramps do not provide edge protection or hand rails as required. The bowling alley shall provide an accessible ramp with either edge protection or handrails leading to the bowling lanes.

**Complete By:  June 15, 2007**

## SIGNAGE

**K.    DEFENDANT SHALL PROVIDE SIGNS THROUGHOUT THE FACILITY ADVISING THE DISABLED OF THE ACCESSIBLE ELEMENTS OF THE FACILITY.**

Defendant shall provide signs advising the disabled of the accessible elements of the facility. This includes, but is not limited to, parking signs, restroom signs, signs indicating the accessible route and, where there are inaccessible entrances, signs directing the disabled to the accessible entrance.

ADA compliant signage shall be prominently displayed indicating that, where applicable, assistance is available upon request. Defendant shall provide directional signage outside the front of the hotel indicating the location of the accessible entrance. Defendant shall also provide compliant signage near the public restroom and locker rooms in the pool area.

**Complete By:  June 15, 2007**

**PUBLIC TELEPHONES**

**L.** **BANQUET ROOM PUBLIC TELEPHONE IN THE FACILITY SHALL BE ACCESSIBLE.**

Defendant's public telephone, in the banquet room, is mounted 61" AFF, exceeding the maximum height allowance, and needs to be accessible to the wheelchair bound and hearing impaired. Defendant shall arrange for its public telephone, in the banquet room, to be modified so that it is accessible, including any height adjustment and appropriate volume control on the telephone.

**Complete By: June 15, 2007**

**M.** **POLICIES AND PROCEDURES**

(a) Defendant shall include a procedure in employee training as well as information about assorted services provided to people with disabilities, and how to use them pursuant to Section 36.302 of the ADAAG.

Defendant shall train staff on check-in procedure, when checking guests with a disability, such as informing them about what to do in case of a fire, asking if they need an alarm, bench, paddle key, instructions on how to use the close caption on the television, etc. during their stay.

(b) Defendant shall also train staff to lower the shower unit (once installed), and set up the alarm kits upon check-in of a person with a disability.

(c) Defendant shall provide the following items in alternative formats so that blind persons and persons with low visions can read them. Alternative formats include Braille, large print, and audio recordings. These items are as follows: Fire-safety

information, maximum room rate information, telephone and television information cards, guest services guides, restaurant menus, room service menus and all other printed materials provided for use by guests.

(d)     Defendant shall implement a policy of advising disabled guests of the availability of ADA compliant tub seats.

(e)     Defendant's staff shall, upon request, provide assistance, to disabled guests, in completing registration information and service request forms, and shall read menus, hotel bills and other documents, to the guests, where Braille, tape, or large print documents are not available.

(f)     When handing currency to a disabled guest, personnel shall individually identify each bill to the customer while counting.

(g)     Credit cards shall be handed to disabled guests after imprinting, not simply laid on a counter or table. Defendant shall also provide signature templates for use with persons who are visually impaired.

(h)     Defendant agrees to monitor the condition of the sidewalks and walkways throughout the property to ensure that the surface of the path of travel remains even and unbroken.

(i)     Defendant shall require all personnel to aid in monitoring the designated accessible parking spaces, as well as the accessible routes throughout the property, to ensure that the parking spaces have not been illegally parked in, and also to ensure that the accessible routes have not become blocked.

(j)     Defendant shall develop an evacuation plan that seeks to accommodate people with disabilities in the event of an emergency.

(k)    Defendant agrees to maintain the designated accessible parking spaces, within the property, so that the paint is always clearly visible.

**N.**    **GIFT SHOP**

The gift shop door does not provide the minimum of 18" of clear floor space from the latch side of the door to the exit.  As an alternative solution, Defendant should post a sign, outside the gift shop, to inform disabled persons in a wheelchair that assistance is available inside the gift shop.  Defendant shall instruct employees, in the gift shop, to assist any disabled person in a wheelchair who is unable to gain entry into the gift shop, and shall offer assistance outside the door of the gift shop.

**Complete By:  June 15, 2007**

**O.**    **STAIRS AND RAMPS**

The stairway, in the lobby, leading to the second floor, does not have stairs with closed risers as required, and does not provide compliant handrails as required.  However, there are several other stairways leading to the second floor with closed risers and compliant handrails.  A sign will be posted at or near the lobby stairwell directing all disabled persons to the compliant alternative stairwells.


The sundeck, fitness and second floor sleeping rooms have only stairways leading to them, and do not provide an alternate accessible route for a person in a wheelchair.  Defendant will provide, upon request, all disabled persons transportation to and from the JenMichael Fitness and Gymnasium located in the Sandusky Plaza, approximately one mile from the Quality Inn.  The interior ramp located next to the pool area does not provide compliant handrails on both sides as required, and this condition shall be corrected by Defendant.

Complete By: June 15, 2007

**P.** **LOCKER ROOMS**

The locker rooms in the pool area were constructed, in 1970, and it is not possible to retrofit these rooms to comply with the ADA requirements. Absent complete renovation this area, which Defendant cannot reasonably afford, these locker rooms will remain as they presently exist.

Complete By:  June 15, 2007

SIGNATURES:

Parties:

PLAINTIFF(S):

By: ___*Maria Holley*___       Date: _5/5/06_
    Disabled Patriots of America, Inc.

By: _____       Date: _____
    Michael Miles

DEFENDANT:

By: _____       Date: _____
    S & S Realty Ltd., an Ohio Limited
    Liability Company, d/b/a Quality Inn

12385-304

174360.doc                14

Complete By: June 15, 2007

P.  **LOCKER ROOMS**

The locker rooms in the pool area were constructed, in 1970, and it is not possible to retrofit these rooms to comply with the ADA requirements. Absent complete renovation this area, which Defendant cannot reasonably afford, these locker rooms will remain as they presently exist.

**Complete By:  June 15, 2007**

**SIGNATURES:**

**Parties:**

**PLAINTIFF(S):**

By: _____          Date: _____
    Disabled Patriots of America, Inc.

By: _____          Date: 05/06/06
    Michael Miles

**DEFENDANT:**

By: _____          Date: _____
    S & S Realty Ltd., an Ohio Limited
    Liability Company, d/b/a Quality Inn

12385-304

174360.doc                              14

provide compliant handrails on both sides as required, and this condition shall be corrected by Defendant.

Complete By: June 15, 2007

**P.  LOCKER ROOMS**

The locker rooms in the pool area were constructed, in 1970, and it is not possible to retrofit these rooms to comply with the ADA requirements. Absent complete renovation this area, which Defendant cannot reasonably afford, these locker rooms will remain as they presently exist.

Complete By: June 15, 2007

**SIGNATURES:**

**Parties:**

**PLAINTIFF(S):**

By: _____        Date: _____
    **Disabled Patriots of America, Inc.**

By: _____        Date: _____
    **Michael Miles**

**DEFENDANT:**

By: _____        Date: 5/11/06
    **S & S Realty Ltd., an Ohio Limited**
    **Liability Company, d/b/a Quality Inn**

IT IS SO ORDERED
May 22, 2006

s/ Christopher A. Boyko
Christopher A. Boyko
U.S. District Judge

12385-304

174360.doc                    14